RECORD NO. 15-1393

IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

**CUMBERLAND COUNTY HOSPITAL INCORPORATED,**
**d/b/a Cape Fear Valley Health System,**

*Plaintiff-Appellant,*

v.

**SYLVIA MATHEWS BURWELL, in her official capacity as**
**Secretary of Health and Human Services,**

*Defendant-Appellee.*

OPENING BRIEF OF PLAINTIFF-APPELLANT

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF NORTH CAROLINA AT RALEIGH

Kathryn Frances Taylor
K&L GATES LLP
Suite 400
430 Davis Drive
Morrisville, North Carolina 27560
(919) 466-1268 (Telephone)
katie.taylor@klgates.com

Counsel for Plaintiff-Appellant

## CORPORATE DISCLOSURE STATEMENT

Appellant Cumberland County Hospital System d/b/a Cape Fear Valley Health System is a non-profit corporation organized under the laws of the State of North Carolina. It does not have any parent corporations nor any interest holders who hold more than ten percent (10%) of the outstanding interests.

# TABLE OF CONTENTS

Corporate Disclosure Statement

Table of Contents ........................................................................................... i

Table of Authorities ..................................................................................... iv

Jurisdictional Statement ............................................................................... 1

Statement of Issues ....................................................................................... 1

Statement of the Case ................................................................................... 2

A.    The Medicare Program ..................................................................... 3

B.    The Medicare Appeals Process ......................................................... 5

C.    The Delay Affecting CFVHS'S Appeals ........................................... 9

D.    The District Court's Decision ......................................................... 11

Standard of Review ..................................................................................... 14

Summary of Argument ................................................................................ 15

Argument ..................................................................................................... 16

I.   CFVHS Adequately Pled a Mandamus Claim ....................................................17

    A.   CFVHS Pled The Existence of a Clear Duty, A Clear Right To The Relief Sought, And The Lack Of An Adequate Remedy.........................18

    B.   CFVHS Adequately Alleged That The Act Requested Is An Official Act Or Duty And That Issuance Of The Writ Will Effect Right And Justice ...................................................................................................20

II.  The District Court Misapplied The Elements Of Mandamus and Misconstrued The Plain Language Of The Medicare Act o Dismiss CFVHS Mandamus Claim...........................................................................................22

    A.   The District Court Did Not Properly Apply The Mandamus Standard To Differentiate Between "Ministerial And Discretionary" Acts...........22

    B.   The Medicare Act Requires An ALJ To Conduct A Hearing And Issue A Decision Within Ninety Days Of Appeal...........................................25

        1.   The Plain Language: "Shall" Means "Shall." ...............................26

        2.   The Legislative History And Purpose of § 1395ff(d)(1)(A) Support Interpreting "Shall" As Mandatory. .................................28

        3.   The Misapplication Of A Single Sentence From A Treatise Does Not Trump Plain Language.....................................................30

    C.   The District Court Misconstrued The Nature And Purpose Of The Medicare Act's Escalation Provisions.....................................................33

III. The District Court Erred When It Purported To Exercise Its Discretion Against Awarding Mandamus On A Rule 12(b)(6) Motion. ...........................37

    A.   The District Court Erred When It Weighed Competing Equities And Exercised Discretion On A Rule 12(b)(6) Motion. ...............................37

    B.   The District Court Exceeded Its Rule 12(b)(6) Boundaries When It Cherry Picked Public Record Evidence That Favored The Secretary's Position. ..................................................................................................41

IV.   The District Court's Dismissal Of CFVHS'S Declaratory Judgment Claim
      Should Be Reversed ............................................................................................44

CONCLUSION ............................................................................................................45

ADDENDUM

      42 § 1395ff ....................................................................................Addendum-1

# TABLE OF AUTHORITIES

**Page**

## CASES:

*Air Line Pilots Ass'n, Int'l v. US Airways Grp., Inc.*, 609 F.3d 338
(4th Cir. 2010)................................................................... 27, 34

*Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 101 S. Ct. 188, 66 L.Ed.2d 193
(1980) ............................................................................ 23, 24

*American Hospital Ass'n v. Burwell*, --- F. Supp.3d ----, 2014 WL 7205335
(D.D.C. Dec. 18, 2014) ............................................................ 37

*AnchorBank FSB v. Hofer*, 649 F.3d 610 (7th Cir. 2011)................................ 20

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ............ 40

*Bedroc Ltd., LLC v. United States*, 541 U.S. 176, 124 S. Ct. 1587, 158 L.Ed.2d 338
(2004) ................................................................................ 26

*Brockington v. Boykins*, 637 F.3d 503 (4th Cir. 2011) ...................................... 38, 43

*Burnett v. Tolson*, 474 F.2d 877 (4th Cir. 1973) ................................... 23, 24, 25, 32

*Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 112 S. Ct. 1146, 117 L.Ed.2d 391
(1992) ................................................................................ 26

*E. Shore Mkts., Inc. v. J.D. Assoc. Ltd. P'ship*, 213 F.3d 175
(4th Cir. 2000)............................................................... 3, 14, 36

*E.I. Du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435
(4th Cir. 2011) ..................................................................... 38, 39

*Estate of Michael ex rel. Michael v. Lullo*, 173 F.3d 503 (4th Cir. 1999)........ 18, 36

*Goldman v. Belden*, 754 F.2d 1059 (2d Cir. 1985) .................................................. 39

*Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 102 S.Ct. 3245, 73 L.Ed.2d 973
(1982) ................................................................................ 28

*Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) ....... 40

*In re First Fed. Sav. & Loan Assoc. of Durham*, 860 F.2d 135
    (4th Cir. 1988) ................................................................................ *passim*

*In re Aiken Cnty.*, 725 F.3d 255 (D.C. Cir. 2013) ..................................... 42

*In re Barr Labs., Inc,* 930 F.2d 72 (D.C. Cir. 1991) ................................. 37

*In re Ralston Purina Co.*, 726 F.2d 1002 (4th Cir. 1984) ........................ 23

*In re Total Management, LLC*, 706 F.3d 245 (4th Cir. 2013) ................. 29

*Int'l Fed'n of Professional & Technical Engineers, Local No. 1, AFL-CIO v.
    Williams*, 389 F. Supp. 287 (E.D. Va. 1974) ................................. 23

*King v. Burwell*, 759 F.3d 358 *aff'd by* 135 S. Ct. 475, 190 L.Ed. 2d 355
    (2014) ........................................................................................ 36

*Knapp, Stout & Co. v. McCaffrey*, 177 U.S. 638, 20 S.Ct. 824,  44 L.Ed.2d 921
    (1900) ........................................................................................ 35

*Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 118 S.Ct.
    956, 140 L.Ed.2d 62 (1998) ...................................................... 27

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061 (2002) ...... 27

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250
    (4th Cir. 2009) .......................................................................... 39

*Noell Crane Sys. GmbH v. Noell Crane & Serv., Inc.*, 677 F. Supp.2d 852 (E.D.
    Va. 2009) ................................................................................... 24

*Pinnacle Armor, Inc. v. U.S.*, 648 F.3d 708 (9th Cir. 2011) ................... 40

*Reiter v. Sonotone Corp.*, 442 U.S. 330, 99 S.Ct. 2326, 60 L.Ed.2d 991 (1979) ... 29

*Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49 (1st Cir. 2013) .................. 39

*Rubin v. United States*, 449 U.S. 424, 101 S. Ct. 698, 66 L.Ed.2d 633 (1981) ...... 26

*Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)............... 40

*Shapleigh v. Mier*, 299 U.S. 468, 57 S.Ct. 261, 81 L.Ed. 355 (1937) ................... 43

*Stone v. Instrumentation Lab. Co.*, 591 F.3d 239 (4th Cir. 2009) ......................... 15

*Tennessee Valley Auth. v. Hill*, 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117
    (1978) ...................................................................................................... 42

*U.S. ex. rel. McLennan. v. Wilbur*, 283 U.S. 414, 51 S.Ct. 502, 504 75 L.Ed. 1148
    (1931) ...................................................................................................... 23

*U.S. ex rel. Rahman v. Oncology Assoc., P.C.*, 198 F.3d 502
    (4th Cir. 1998)................................................................................*passim*

*U.S. v. Monsanto*, 491 U.S. 600, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989) ........... 27

*U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290
    (1989) ...................................................................................................... 28

*U.S. v. Turner*, 389 F.3d 111 (4th Cir. 2004) .......................................................... 15

*Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 172
    S.E.2d 518 (N.C. 1970)............................................................................ 25

*Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504
    (1978) ...................................................................................................... 23

*Wilson v. Holyfield*, 227 Va. 184, 313 S.E.2d 396 (Va. 1984) ............................... 25

*Work v. U.S. ex rel. Rives*, 267 U.S. 175, 45 S.Ct. 252 (1925) ............................... 23

## STATUTES:

28 U.S.C. § 1291 ....................................................................................................... 1

28 U.S.C. § 1361 ....................................................................................................... 1

28 U.S.C. § 2679 ..................................................................................................... 35

29 U.S.C. § 1854(d)(2) ........................................................................... 35

42 U.S.C. § 1395ff(a)(2)(A) .................................................................... 3

42 U.S.C. §§ 1395ff(a)(3)(A) .................................................................. 5

42 U.S.C. §§ 1395ff(a)(3)(C)(ii) ........................................................ 5, 6

42 U.S.C. § 1395ff(c) ............................................................................. 5

42 U.S.C. § 1395ff(d) ........................................................................... 28

42 U.S.C. § 1395ff(d)(1)(A) ...................................................... *passim*

42 U.S.C. § 1395ff(d)(2) ......................................................................... 7

42 U.S.C. § 1395ff(d)(3)(A) ...................................................... 7, 33, 34

42 U.S.C. § 1395kk-1(a)(3) .................................................................... 3

Pub. L. 89-97, 79 Stat. 286 (1965) ....................................................... 3

Pub. L. No. 113-76 Div. H, Title II, 129 Stat 363 (Jan. 17, 2014) ........ 41

## REGULATIONS:

42 C.F.R. § 405.970(c)(2) ...................................................................... 6

42 C.F.R. § 405.1016 ....................................................................... 6, 32

42 C.F.R. § 405.1016(a) ......................................................................... 7

42 C.F.R. § 405.1100(d) ......................................................................... 8

42 C.F.R. § 405.1108 .............................................................................. 7

42 C.F.R. § 405.1108(a) ......................................................................... 7

42 C.F.R. § 405.1108(d)(1) ..................................................................... 8

42 C.F.R. § 405.1108(d)(2) ........................................................ 8

42 C.F.R. § 405.1108(d)(3) ........................................................ 8

42 C.F.R. § 405.1108(d)(4) ........................................................ 8

 42 C.F.R. § 405.1108(d)(5) ........................................................ 8

42 C.F.R. § 405.1132(a) ........................................................ 8

Medicare Program:  Changes to the Medicare Claims Appeal Procedures 67 Fed. Reg. 69,312 (proposed Nov. 15, 2002) .................................... 32

**LEGISLATIVE MATERIAL:**

H.R. Rep. No. 108-391 ........................................................ 28

**OTHER REFERENCES:**

HHS Appropriations Act, 2014, HHS, OMHA, *Justification for Estimates for Appropriations Committees, Overview of Performance, Fiscal Year 2015*, (2014) .......................................... 32

Brett Norman and David Nather, *The Obamacare Money Under the Couch*, POLITICO, Mar. 7, 2014 .......................................... 32

NORMAN J. SINGER, J.D. & J.D. SHAMBIE SINGER, STATUTES AND STATUTORY CONSTRUCTION § § 57:4, 57:5, 57:6, 57:7, 57:8 (7th ed. 2008) ..................... 30, 31

Medicare agency seeks to speed up appeals for coverage, The Washington Post (Jan. 19, 2014), *available at* www.washingtonpost.com/politics/medicare-agency-seeks-to-speed-up-appeals-for-coverage/2014/01/19.html ..................... 43

OMHA Budget Overview, *available at* http://www.hhs.gov/about/budget/budget-in-brief/omha/index.html ............................................ 42

## JURISDICTIONAL STATEMENT

The district court possessed subject matter jurisdiction over this mandamus case pursuant to 28 U.S.C. § 1361. The Court of Appeals possesses jurisdiction in this case pursuant to 28 U.S.C. § 1291 because this appeal is from a final Order and Judgment of the district court, which disposed of all parties' claims. The Order and Judgment appealed from was entered on March 17, 2015 (JA243, 260) and the Notice of Appeal was timely filed on April 15, 2015. (JA261)

## STATEMENT OF ISSUES

(1)    Did Cumberland County Hospital System d/b/a Cape Fear Valley Health System adequately plead a claim arising under the Mandamus Act in its Complaint?

(2)    Does the plain language of 42 U.S.C. § 1395ff(d)(1)(A) that an administrative law judge "shall" conduct and conclude a hearing and render a decision within ninety (90) days of a timely-filed request give rise to a clear duty on the part of the U.S. Department of Health & Human Services to provide a hearing within the time limit and a clear right of plaintiff CFVHS to receive one?

(3)    Did the district court err by exercising its equitable discretion to deny mandamus on a Rule 12(b)(6) Motion to Dismiss?

## STATEMENT OF THE CASE

This case arises out of an aggressive Medicare audit program under which Cumberland County Hospital System d/b/a Cape Fear Valley Health System ("CFVHS") was unfairly targeted and required to return to the Department of Health & Human Services ("HHS") more than $13 million in Medicare payments CFVHS had received for providing inpatient rehabilitation services to Medicare beneficiaries. Federal law gives CFVHS the right to a hearing before an administrative law judge at HHS to appeal the improper actions of the audit contractor. The same federal law requires the administrative law judge to hold a hearing and render a decision within ninety (90) days of a timely-filed appeal. CFVHS timely filed more than 760 appeals seeking a hearing before an ALJ and reversal of the auditor's decisions. Almost two years later, CFVHS is still waiting for its ALJ hearings. In its Complaint filed in September 2014, CFVHS sought a writ of mandamus requiring the Secretary to provide CFVHS with the hearings and decisions on its appeals that it should have received almost two years ago. The district court dismissed CFVHS's mandamus action under Federal Rule of Civil

Procedure 12(b)(6). [1]  In this appeal, CFVHS seeks reversal of the district court's decision.

## A.    THE MEDICARE PROGRAM.

Congress enacted the Medicare Program in 1965 under Title XVIII of the Social Security Act to provide health insurance primarily to individuals sixty-five years of age and older.  Social Security Amendments of 1965, Pub. L. 89-97, 79 Stat. 286 (1965) (codified as amended at 42 U.S.C. §§ 1395-1396v).  CFVHS and its Inpatient Rehabilitation Facility ("IRF") qualify as providers of hospital services under Title XVIII, also known as the Medicare Act. JA12.

When CFVHS furnishes services to a Medicare beneficiary, it submits a claim for reimbursement to a Medicare Administrative Contractor ("MAC").  42 U.S.C. § 1395ff(a)(2)(A).  MACs are government contractors responsible for processing Medicare claims and making payments. 42 U.S.C. § 1395kk-1(a)(3).  All of the Medicare claims at issue in this case were initially paid by the MAC.

Some paid Medicare claims are later subjected to a process known as "post-payment review," in which a different third-party contractor audits, and frequently reverses, MAC payment decisions.  JA12.  The audit contractor is known as a

---

[1] Because CFVHS appeals from a Rule 12(b)(6) dismissal, the facts described below are taken from the Complaint and from statute or formal rule.  Although the Secretary may ultimately dispute some of the facts described herein, the standard of review for a Rule 12(b)(6) dismissal requires the Court to accept the facts pled in the Complaint as true for purposes of this appeal. *E. Shore Mkts., Inc. v. J.D. Assoc. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

Recovery Audit Contractor, or "RAC." Id. RACs are permitted to audit MAC determinations on providers' claims dating back three years, and often through the use of nurses or non-professional staff, they frequently question the medical judgment of the treating physician and other clinical professionals providing care. Id. The RACs have a pecuniary interest in their audit work, as they are paid a percentage of the amount of purportedly "improper" Medicare reimbursement they recover from providers. Id. Thus, RACs are perversely incentivized to target providers of more expensive services, such as inpatient rehabilitation facilities, and overturn the MAC payment decisions on any basis, no matter how flimsy or insignificant. JA12, JA21-22.

Beginning in 2012 and extending through May 2013, CFVHS's IRF was improperly targeted by a RAC auditor, with devastating results. During this time period, CFVHS received requests for 1,169 patient records, the maximum number of records that the RAC could request under applicable rules. JA21. Of the 1,169 IRF cases the RAC audited, the RAC denied payment in 940, requiring CFVHS to return to CMS more than $13 million in Medicare payments and statutory interest. JA21, JA8  Notably, not a single one of the RAC's denials alleged that CFVHS had not provided services to the Medicare beneficiaries for which CFVHS had initially received payment. JA21  Instead, the RAC denied CFVHS's claims

because of alleged documentation errors and by questioning the medical judgment of the treating physicians on a post-hoc basis. JA21-22.

**B.    THE MEDICARE APPEALS PROCESS.**

CFVHS timely appealed the RAC's decisions and has pursued its appeals through the Medicare Appeals process. JA 22-23.  Appeals of RAC audit decisions are subject to a four-step process.  *First,* an aggrieved provider submits the RAC-denied claim to the MAC that originally approved and paid the claim for redetermination. 42 U.S.C. §§ 1395ff(a)(3)(A) & (C)(ii).  The MAC has sixty (60) days to review the claim and issue a decision on the RAC payment denial. 42 U.S.C. § 1395ff(a)(3)(C)(ii).

*Second,* if unsatisfied with the MAC's redetermination, a provider can appeal the MAC's decision to a Qualified Independent Contractor ("QIC") for reconsideration. 42 U.S.C. § 1395ff(c).  QICs must independently review the MAC's determination and render a decision within sixty days. 42 U.S.C. § 1395ff(c)(3)(C)(ii).  In CFVHS's cases, however, the QIC functioned as a mere rubber stamp on the RAC's denials. JA 22-23.[2]  If the QIC is unable to complete its review within sixty days, it must notify all parties and offer the provider the

---

[2]  In addition to the allegations set forth in the Complaint regarding the inadequacy of the review CFVHS received at the QIC level, CFVHS can provide documents and testimony reflecting that the QIC's medical director did not even possess the correct inpatient rehabilitation facility standards at the outset of the QIC's review, and requested and received those from CFVHS.

opportunity to "escalate" the appeal to an ALJ. 42 U.S.C. § 1395ff(c)(3)(C)(ii); 42 C.F.R. § 405.970(c)(2).

*Third*, a provider may next request a hearing before an administrative law judge ("ALJ"). 42 U.S.C. § 1395ff(d)(1)(A). The Office of Medicare Hearings and Appeals ("OMHA") within the Department of Health & Human Services employs and oversees the ALJs. JA13-14. The ALJ level is the first level of appeal at which the provider receives a review from an entity that is not financially incentivized to rule against it. JA8. Not surprisingly, this is the level of the appeals process at which providers have typically been able to obtain relief from adverse RAC decisions. Id.; JA14.

The Medicare Act directs that "an administrative law judge shall conduct and conclude a hearing on a decision of a qualified independent contractor . . . and render a decision on such hearing by not later than the end of the 90-day period beginning on the date a request for hearing has been timely filed." 42 U.S.C. § 1395ff(d)(1)(A). HHS has similarly promulgated a formal rule directing, "When a request for an ALJ hearing is filed after a QIC has issued a reconsideration, the ALJ must issue a decision, dismissal order, or remand to the QIC, as appropriate, no later than the end of the 90 calendar day period beginning on the date the request for hearing is received . . ." 42 C.F.R. § 405.1016.

6

The ALJ hearing is the first opportunity for providers to obtain a review by an independent adjudicator with no financial incentives adverse to the interests of the health care provider. JA8. It is also the only step in the process at which the appellant is guaranteed a hearing at which it may present testimony and expert opinion. 42 U.S.C. § 1395ff(d)(1)(A); 42 C.F.R. § 405.1016(a). The ALJ hearing is critical to providers, particularly in cases where the RAC has questioned a treating physician's medical judgment. JA8. Notably, it is at this stage in which RAC auditor denials are reversed in approximately 72% of cases. Id.

If an ALJ has not rendered a decision within ninety days, a provider has the option of waiving its right to a hearing and bypassing the ALJ level by escalating its claim to the Departmental Appeals Board ("DAB") within HHS. 42 U.S.C. § 1395ff(d)(3)(A).

**Fourth**, a provider can appeal an adverse ALJ decision to the Departmental Appeals Board ("DAB") within HHS. 42 U.S.C. § 1395ff(d)(2). The DAB conducts a *de novo* review of the ALJ decision and either renders its own decision or remands to the ALJ for further proceedings. Id.; *see also* 42 C.F.R. § 405.1108(a). The DAB is not required to hold a hearing or permit the presentation of additional evidence. 42 C.F.R. § 405.1108. The DAB must act within ninety days on an appeal from an ALJ decision. Id.

7

When a case has been escalated past the ALJ level, the DAB has 180 days to take one of four actions. 42 C.F.R. § 405.1132; 42 C.F.R. § 405.1100(d).  First, it may render a summary decision on the basis of the record established before the QIC. 42 C.F.R. § 405.1108(d)(1).   Second, it may conduct any additional proceedings, including a hearing, if the DAB believes it is necessary to render its decision. 42 C.F.R. § 405.1108(d)(2).  Third, it may remand the appeal to the ALJ level, placing the appellant at the back of the ALJ line. 42 C.F.R. § 405.1108(d)(3). Finally, it may dismiss the appeal because the appellant did not have a right to escalate, or for any other reason for which the ALJ could have properly dismissed the appeal. 42 C.F.R. § 405.1108(d)(4)&(5).

If the DAB does not act on an escalated appeal within 180 days, the appellant may request further escalation to a federal district court. 42 C.F.R. § 405.1132(a).  However, the DAB has discretion to prevent the appellant from escalating to federal court by remanding the case to the back of the ALJ line within five (5) days of receiving the escalation request. 42 C.F.R. § 405.1132(a).  It also has the power to issue a quick decision without a hearing or presentation of additional evidence. Id.

The statutory time periods governing the appeals process provide for all levels of administrative review to be completed within one year. JA14.  Due to

HHS's actions as further detailed below, however, the time it takes to pursue a claim appeal is far exceeding the timeframes established in the Medicare Act.

## C.      THE DELAY AFFECTING CFVHS'S APPEALS.

As a "safety net" facility serving a population largely consisting of poor, elderly and military families located in Southeastern North Carolina, CFVHS was financially crippled by the RAC auditor's abusive tactics, and had no choice but to appeal the RAC auditor's attempts to claw back more than $13 million for services provided to Medicare beneficiaries. (JA10)  Between September 5, 2013 and July 24, 2014, CFVHS filed 762 appeals with OMHA seeking a hearing before an ALJ. JA23.    At the time CFVHS filed its mandamus Complaint, OMHA had acknowledged receipt of only 472 of those appeals. Id.  Further, OMHA wrote to CFVHS stating that it would not even assign many of those 472 appeals to an ALJ - much less review and issue a decision on them - for at least 28 months. Id.  True to its word, at the time of filing this brief, OMHA has not assigned a single one of CFVHS's more than 750 pending appeals to an ALJ, despite the fact that those appeals are now nearly two years old.

Unfortunately, CFVHS is not alone in being victimized by RAC auditors. The misconduct of RAC auditors under the supervision of CMS has caused the Medicare appeals process to become flooded with the claims of aggrieved providers over the past three to four years. JA16.  In just two years (2012 and

2013), the backlog of ALJ-level appeals quintupled, from 92,000 to 460,000 pending claims as a result of the increase in appeals of RAC auditor decisions. Id. As of December 2013, appeals had awaited review for an average of sixteen months - much longer than the 90-day time period prescribed by statute. Id.

In December 2013, OMHA announced a moratorium on assignment of provider appeals to ALJs for at least the next two years, and possibly longer. JA16-17. Over 480,000 claim appeals were awaiting assignment to an ALJ as of February 12, 2014, with 15,000 new appeals filed each week. JA17. The more than two year moratorium on assignment of new appeals to an ALJ, the likely additional wait times for assignment even after the moratorium is lifted, and the predicted wait time before a hearing once a case is assigned to an ALJ, means that providers like CFVHS can realistically expect to wait close to three years, and probably longer, even to obtain an ALJ hearing, let alone receive a decision. Id. Indeed, as the backlog grows, providers like CFVHS are questioning whether they will ever receive a hearing and decision.

Although HHS has proposed a handful of pilot programs utilizing various ADR methods in an attempt to reduce the backlog, the eligibility requirements HHS has imposed to participate in those programs exclude IRFs like the one at CFVHS. JA21. CFVHS has no escape from the endless administrative holding pattern unless it waives its right to a hearing by attempting escalation. JA20-21.

10

Of course, escalation is extremely risky, as the DAB is under no obligation to do anything other than remand CFVHS's more than 750 claims to the very back of the ever-growing ALJ line. 42 C.F.R. § 405.1108(d)(3); 42 C.F.R. § 405.1132(a).

Further reducing the effectiveness of escalation as a potential solution to CFVHS's problems, the DAB has announced that it will not grant hearings or conduct oral arguments on escalated claims unless it believes a particular claim presents "an extraordinary question of law, policy or fact." JA18. This means that a provider will never receive an opportunity to present expert testimony in a typical appeal in which the RAC auditor questioned the medical judgment of the treating physician. Further, the DAB's own backlog makes escalation increasingly unlikely to be a fruitful endeavor. At the end of fiscal year 2013, the DAB had 4,888 pending appeals, 112% more than it had at the end of fiscal year 2012. JA17. OMHA projected that it would receive 7,000 DAB appeals in fiscal year 2014, and the number was expected to rise to 8,000 for fiscal year 2015. JA17-18. As a result, OMHA has conceded that the DAB is "unlikely to meet the 90-day deadline for issuing decisions in most appeals." JA18. As the DAB's backlog grows, so does its incentive to reflexively remand escalated appeals back to the ALJ level.

## D.    THE DISTRICT COURT'S DECISION.

After waiting more than a year for 760 hearings representing over $13 million that were supposed to be conducted in ninety days, CFVHS filed its

Complaint in the district court seeking a writ of mandamus and declaratory judgment on September 12, 2014. JA2, JA6.   On November 14, 2014, the Secretary moved to dismiss the mandamus claim pursuant to Federal Rule of Civil Procedure 12(b)(1). JA3, JA27.[3]  The Secretary's brief far exceeded examination of the three elements of jurisdiction, and contained a complete presentation of the Secretary's case. JA55-60.  In particular, the Secretary raised two arguments not addressed in the Complaint nor in the test for mandamus jurisdiction.  First, the Secretary argued that budget constraints prevented the Secretary from complying with the statutory deadline for holding ALJ hearings and rendering decisions. JA 55-56.  Second, the Secretary argued that a writ of mandamus would require her to reorder agency priorities. JA56.   The Secretary attached evidence outside the Complaint to support her arguments. JA62-74.

CFVHS responded to the Secretary's Motion by arguing that each of the elements of mandamus jurisdiction had been properly pled in the Complaint, and that those allegations were not frivolous. JA86-103.   Accordingly, binding precedent in this Circuit required the district court to find that jurisdiction existed and proceed to the merits of the claim. JA86-87.  Moreover, CFVHS reminded the district court that the Secretary's only pending motion relating to the mandamus claim was a Rule 12(b)(1) Motion to Dismiss, and urged the Court that

---

[3] The Secretary's brief also argued that CFVHS's declaratory judgment claim should be dismissed pursuant to Rule 12(b)(6). JA60.

consideration of the Secretary's arguments regarding the ultimate merits of CFVHS's mandamus claim was beyond the scope of the district court's inquiry under Rule 12(b)(1). JA103.

CFVHS's arguments fell on deaf ears. The district court issued an Order dismissing the Complaint on March 17, 2015, in which the court found that it possessed mandamus jurisdiction, but then converted the Secretary's Rule 12(b)(1) Motion to one under Federal Rule 12(b)(6) and dismissed the Complaint for failure to state a claim. JA249, JA258-259, JA260. Purportedly working under the Rule 12(b)(6) standard, the district court's dismissal was grounded on two bases.

First, the district court credited the Secretary's statutory construction argument that the mere existence of an escalation option in the Medicare Act prevented a finding that the Secretary had a "clear duty" to require an administrative law judge to hold a hearing and render a decision within 90 days of a timely filed appeal pursuant to 42 U.S.C. § 1395ff(d)(1)(A). JA251-252. Likewise, the mere existence of an escalation option prevented the district court from finding that CFVHS had a "clear right" to have its timely appeals heard and decided by an ALJ within ninety days. Id. The district court did not address the question of whether the escalation process constitutes an adequate remedy, and elsewhere acknowledged that CFVHS had pled in the Complaint that escalation was inadequate to remedy the Secretary's statutory violations. Id; JA249.

13

Second, the district court considered the Secretary's arguments that exceeded the scope of the three-part jurisdictional inquiry. JA252-258. The district court not only credited them, but exercised its equitable discretion to deny mandamus relief based on those arguments. JA253. The district court did not convert the Secretary's motion into one for summary judgment pursuant to Federal Rule of Civil Procedure 56, nor did it give CFVHS notice and an opportunity to present its own evidence and counter-arguments before it ruled. JA250.

Finally, the district court dismissed CFVHS's declaratory judgment claim because the Declaratory Judgment Act does not provide a private right of action, and the court had previously dismissed the underlying mandamus claim. JA258.

CFVHS timely filed this appeal on April 15, 2015 (JA261), and seeks reversal of the district court's Order and remand of the case to the district court for discovery and presentation of evidence.

## STANDARD OF REVIEW

A district court's Rule 12(b)(6) dismissal is reviewed *de novo. E. Shore Mkts., Inc. v. J.D. Assoc. Ltd. P'ship*, 213 F.3d at 180 (4th Cir. 2000). In its review, this Court determines "whether the complaint, under the facts alleged and under any facts that could be proved in support of the complaint, is legally sufficient." *Id*. "Because only the legal sufficiency of the complaint, and not the facts in support of it, are tested under a Rule 12(b)(6) motion, we assume the truth

of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the Complaint's allegations." *Id.*

The district court's statutory interpretation of the Medicare Act is also reviewed *de novo. Stone v. Instrumentation Lab. Co.*, 591 F.3d 239, 242-43 (4th Cir. 2009); *U.S. v. Turner*, 389 F.3d 111, 119 (4th Cir. 2004).

## SUMMARY OF ARGUMENT

The district court erred when it dismissed CFVHS's well-pled Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). An examination of the Complaint reveals that CFVHS alleged facts supporting each and every one of the elements of a mandamus claim. Accordingly, reversal is appropriate here.

Each of the two holdings in the district court's opinion was in error. *First*, the district court failed to give effect to the plain language of 42 U.S.C. § 1395ff(d)(1)(A) requiring that an administrative law judge "shall" conduct a hearing and render a decision within ninety (90) days of the timely filing of a Medicare appeal. The district court's interpretation of a separate provision giving the appellant the option of waiving its hearing rights to escalate its case as relieving the Secretary of her statutory duty under § 1395ff(d)(1)(A) cannot be reconciled with the plain language, legislative intent nor structure of the Medicare Act. Further, the Secretary's creative statutory interpretation should not have

15

prevented the court from finding a sufficiently "clear" right or duty to support a mandamus claim. The district court's statutory interpretation should be reversed.

*Second*, the district court far exceeded the boundaries of Rule 12(b)(6) review when it exercised its discretion to deny mandamus relief at the pleading stage. To exercise its discretion, the district court considered arguments and evidence outside the Complaint, and did not give CFVHS notice, discovery, and a reasonable opportunity to present evidence before ruling. Because the district court's exercise of discretion was not confined to the scope of an appropriate inquiry under Rule 12(b)(6), the dismissal should be reversed.

## ARGUMENT

CFVHS filed its petition in the district court because it was being deprived of its "day in court" in the administrative process. And the district court responded by improperly denying CFVHS its "day in court" there as well. It is contrary to the notions of basic fair play and due process that the government can claw back almost $13 million in payments CFVHS received for providing health care services for Medicare beneficiaries, and then prevent CFVHS from ever getting a "day in court" to oppose the claw-back, or delaying that day for so many years as to render it ineffective to remedy the wrong. Yet, that is precisely the position in which the district court's decision leaves CFVHS.

16

The question in this appeal - regardless of what the Secretary may imply in her brief - is *not* whether CFVHS can or should ultimately prevail on its mandamus action. Any consideration of the Secretary's merits arguments must await discovery and a fair opportunity for CFVHS to present its own contrary arguments and evidence. Instead, the only question properly before the Court is whether CFVHS has adequately pled a claim on which relief can be granted in its Complaint. Because the Complaint adequately alleges an action for mandamus, the district court's order and judgment should be reversed.

## I.  CFVHS ADEQUATELY PLED A MANDAMUS CLAIM.

The district court erred when it dismissed CFVHS's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The court elsewhere found that CFVHS had adequately pled the existence of three elements of its mandamus claim, and did not identify any way that the other two elements were inadequately pled. JA248-249.

The elements of mandamus are well-established in this Circuit. The Complaint must allege: (1) a clear and indisputable right to the relief sought; (2) the responding party has a clear duty to do the specific act requested; (3) the act requested is an official act or duty; (4) there are no other adequate means to attain the desired relief; and (5) the issuance of the writ will effect right and justice in the circumstances. *U.S. ex rel. Rahman v. Oncology Assoc., P.C.*, 198 F.3d 502, 511

(4th Cir. 1998). CFVHS's Complaint adequately alleged facts supporting each of these elements.

### A.    CFVHS Pled The Existence Of A Clear Duty, A Clear Right To The Relief Sought, And The Lack Of An Adequate Remedy.

The first, second and fourth elements of a mandamus action must be pled both to state a claim and to establish mandamus jurisdiction. *Compare U.S. ex rel. Rahman*, 198 F.3d at 511 *with Estate of Michael ex rel. Michael v. Lullo*, 173 F.3d 503, 512-13 (4th Cir. 1999). Mandamus jurisdiction exists where: "(1) the petitioner has shown a clear right to the relief sought; (2) the respondent has a clear duty to do the particular act requested by the petitioner; and (3) no other adequate remedy is available." *Estate of Michael ex rel. Michael*, 173 F.3d at 512-13; *In re First Fed. Sav. & Loan Assoc. of Durham*, 860 F.2d 135, 138 (4th Cir. 1988). Thus, the three elements of mandamus jurisdiction merge with elements of the merits inquiry.

*First*, CFVHS alleged a clear and indisputable right to the relief sought - a hearing within ninety (90) days in each of their claim appeals that have been pending at the ALJ level for almost two years - pursuant to the plain language of 42 U.S.C. § 1395ff(d)(1)(A). JA248. The statute requires that an administrative law judge "shall" conduct a hearing and render a decision within ninety (90) days of the filing of a timely appeal. 42 U.S.C. §1395ff(d)(1)(A). Indeed, in passing on the Secretary's Rule 12(b)(1) motion, the district court found that "[p]laintiff has

18

alleged that under 42 U.S.C. §§ 1395ff(d)(1)(A) it has a right to an ALJ hearing and decision within 90 days after filing a request for hearing." JA248 (citing Compl. ¶¶ 66-70, JA24).

***Second***, CFVHS alleged that "[u]nder federal law, HHS has a clear, indisputable and non-discretionary duty to 'conduct and conclude a hearing on a decision of a qualified independent contractor . . . and render a decision on such hearing by not later than the end of the 90-day period beginning on the date a request for hearing has been timely filed.'" JA24 (quoting 42 U.S.C. § 1395ff(d)(1)(A). Once again, the district court did not dispute that CFVHS had properly alleged the duty element of its mandamus claim for purposes of defeating the Secretary's Rule 12(b)(1) Motion. JA249.

***Third***, the district court found that CFVHS alleged in the complaint "that escalation is not an adequate remedy because it deprives plaintiff of its right to a hearing." JA249 (citing Compl. ¶ 70, JA24) In fact, CFVHS pled many reasons that the Medicare Act's escalation provisions do not adequately remedy the Secretary's statutory violations. The Complaint alleges that: (1) the Departmental Appeals Board, the next level of administrative review after the ALJ level, is also hopelessly backlogged (JA17-18); (2) the Secretary has promulgated formal rules that frustrate any remedial purpose Congress may have intended in the escalation provision, including rules that permit the DAB to remand escalated cases to the

back of the ALJ line without hearing or decision (JA18); and (3) escalation requires waiver of the appellant's right to an ALJ hearing - a hearing which is critical to the complicated and factually-dense appeals that arise from RAC audits, particularly where the auditor questioned the treating physician's medical judgment. (JA24).

The district court found that CFVHS' well-pled allegations regarding the first three elements of its mandamus claim were not frivolous. JA249. And that is where the district court's inquiry should have ended. When considering the Complaint under the Rule 12(b)(6) standard, the Court was required to credit the well-pled allegations in the Complaint and draw every reasonable inference in favor of plaintiff CFVHS. *AnchorBank FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). Its failure to do so constitutes reversible error.

**B.    CFVHS Adequately Alleged That The Act Requested Is An Official Act Or Duty And That Issuance Of The Writ Will Effect Right And Justice.**

The remaining two elements of a mandamus claim were not addressed by the district court, and were not disputed below.

The Complaint adequately alleges that the act requested is an official act or duty. *U.S. ex rel. Rahman*, 198 F.3d at 511. The Medicare Act and rules promulgated pursuant thereto delegate to the Office of Medicare Hearings & Appeals within the U.S. Department of Health & Human Services the duty to hold

the hearing prescribed by the Medicare Statute. JA8. CFVHS has sued Secretary

Burwell in her official capacity as Secretary of Health & Human Services. JA11.

Finally, CFVHS adequately alleged in the Complaint that issuance of the

writ will effect right and justice. *U.S. ex rel. Rahman*, 198 F.3d at 511.

Specifically, CFVHS pled:

> CFVHS is suffering from the crippling effects of being denied more
> than $12.3 million of revenue from its inpatient rehabilitation clinic.
> CFVHS cannot wait an unknown number of years to get back the
> payments it is owed and keep the doors open to its inpatient
> rehabilitation clinic. Indeed, as the backlog grows, it becomes
> increasingly likely that CFVHS may never receive the fair hearing
> guaranteed it under the statute. CFVHS needs swift relief from the
> overreaching of the RAC auditors and a fair opportunity to recover the
> improperly-diverted Medicare payments to continue to provide quality
> services to its patients.

JA10. Indeed, the district court recognized that "[t]here are, undoubtedly,

equitable considerations weighing in plaintiff's favor." JA257. As discussed

further in Section III below, proper application of the Rule 12(b)(6) standard

prevented the Court from disregarding these well-pled allegations in favor of

arguments and evidence extrinsic to the Complaint.

Reversal of the district court's Rule 12(b)(6) dismissal is appropriate

because CFVHS adequately pled facts supporting each element of its mandamus

claim.

## II.   THE DISTRICT COURT MISAPPLIED THE ELEMENTS OF MANDAMUS AND MISCONSTRUED THE PLAIN LANGUAGE OF THE MEDICARE ACT TO DISMISS CFVHS' MANDAMUS CLAIM.

After correctly holding that CFVHS had properly pled three of the elements of its mandamus claim, the district court erred when it did a complete about-face and dismissed the Complaint by holding that the mere existence of a provision allowing a Medicare appellant to waive its right to a hearing prevents CFVHS from alleging that it has a clear right, and the Secretary has a clear duty, to a provide a hearing within ninety days of a timely-filed appeal. JA251-252.   The district court's opinion misapplied the mandamus standard, ignored the plain language of the Medicare Act and contradicted the clear intent of Congress.

### A.   The District Court Did Not Properly Apply The Mandamus Standard To Differentiate Between "Ministerial" And "Discretionary" Acts.

The district court did not properly apply the law of mandamus when it held that the Secretary's statutory interpretation argument precluded a finding of a "clear" duty to act and a "clear" right to a hearing within ninety days. JA252.

To support a mandamus claim, a statutory duty to act must be "a mandatory or ministerial obligation which is so plainly prescribed as to be free from doubt." *In re First Fed. Sav. & Loan Ass'n of Durham*, 860 F.2d at 138.   However, the "doubt" described in the case law is not a mere ephemeral doubt in the mind of the judge as to which of the parties' competing statutory constructions is proper. Instead, it refers to ambiguity as to whether the act prescribed in the statute is

22

ministerial or discretionary. *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36, 101 S.Ct. 188, 191, 66 L.Ed.2d 193 (1980) ("Where a matter is committed to *discretion*, it cannot be said that a litigant's right to a particular result is "clear and indisputable.") (quoting *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 666, 98 S.Ct. 2552, 2559, 57 L.Ed.2d 504 (1978)) (emphasis added); *In re Ralston Purina Co.*, 726 F.2d 1002, 1005 (4th Cir. 1984) ("[C]lear and indisputable requires considerably more strained circumstances than does a mere abuse of discretion."). For this reason, older decisions in this Circuit and others extensively discuss whether particular statutes give rise to a "ministerial" act or a "discretionary" one. *See, e.g., Burnett v. Tolson*, 474 F.2d 877, 882 (4th Cir. 1973) (discussing "ministerial-discretionary dichotomy" used to decide mandamus cases); *Work v. U.S. ex rel. Rives*, 267 U.S. 175, 184-85, 45 S.Ct. 252, 255 (1925) (collecting cases and discussing distinctions between "ministerial" and "discretionary" acts); *Int'l Fed'n of Professional & Technical Engineers, Local No. 1, AFL-CIO v. Williams*, 389 F. Supp. 287, 290 (E.D. Va. 1974) (discussing mandamus in context of ministerial versus discretionary acts and collecting cases).

To support mandamus, "the law must not only *authorize* the demanded action, but *require* it." *U.S. ex rel. McLennan. v. Wilbur*, 283 U.S. 414, 420, 51 S.Ct. 502, 504 75 L.Ed. 1148 (1931) (emphasis added). Where a statute commands a government officer to take an action and leaves no room for the

officer to exercise discretion, that act is "ministerial," and a writ of mandamus may issue to compel the officer to perform the act. *Burnett*, 474 F.2d at 882. But where a statute merely authorizes an officer to act, or permits the officer to exercise discretion as to whether to perform the act, mandamus cannot be granted. *Allied Chem. Corp.*, 449 U.S. at 36, 101 S.Ct. at 191.

The test for determining whether a statute imposes a "clear duty" and gives rise to a "clear right," then, is whether the statute can be fairly interpreted to permit the officer to exercise discretion regarding the act's performance, or whether the language clearly describes a ministerial act. *Burnett*, 474 F.2d at 882; *First Fed. Sav. & Loan Ass'n of Durham*, 860 F.2d at 138.

The district court did not examine this "ministerial-discretionary dichotomy" in its statutory interpretation, but instead found that the existence of a statutory interpretation other than that advanced by CFVHS foreclosed a finding of sufficient "clarity" in the statute. JA252. As courts have long observed when construing contracts, the fact that a creative attorney can concoct an argument to manufacture ambiguity where it otherwise does not exist does not make the language ambiguous. *See, e.g., Noell Crane Sys. GmbH v. Noell Crane & Serv., Inc.*, 677 F. Supp.2d 852, 871 (E.D. Va. 2009) ("[T]he fact that NCSI does not now wish to be bound by the clear and unambiguous terms of the [contract] does not create a dispute as to its actual meaning or a material issue of fact."); *Wilson v.*

24

*Holyfield*, 227 Va. 184, 187, 313 S.E.2d 396, 398 (Va. 1984) ( "Contracts are not rendered ambiguous merely because the parties disagree as to the meaning of the language employed by [the parties] in expressing their agreement."); *Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 354, 172 S.E.2d 518, 522 (N.C. 1970) ("[A]mbiguity ... is not established by the mere fact that the plaintiff makes a claim based upon a construction of . . . language which the company asserts is not its meaning.").

The district court's task was not simply to subjectively weigh the relative strength of competing statutory interpretations and decide where to draw the line between a "clear" duty and an "unclear" one. Instead, the district court's task was to determine whether the statute contained an ambiguity that would permit the Court to conclude that Congress gave the Secretary *discretion* as to whether to hold a hearing and render decision within ninety days of a timely-filed Medicare appeal. *Burnett*, 474 F.2d at 882; *First Fed. Sav. & Loan Ass'n of Durham*, 860 F.3d at 138. As discussed below, the Medicare Act cannot reasonably be construed to give the Secretary any discretion.

### B. THE MEDICARE ACT REQUIRES AN ALJ TO CONDUCT A HEARING AND ISSUE A DECISION WITHIN NINETY DAYS OF APPEAL.

The Medicare Act could not be clearer: "[A]n administrative law judge *shall* conduct and conclude a hearing . . . and render a decision in such hearing by

not later than the end of the 90-day period beginning on the date a request for hearing has been timely filed." 42 U.S.C. § 1395ff(d)(1)(A) (emphasis added). The statute unambiguously confers both a "clear right" to a hearing within ninety days on CFVHS, and a "clear duty" on the Secretary to provide one. It leaves nothing to the Secretary's discretion.

The district court suggested that, under certain circumstances, "shall" can be construed as merely directory, instead of mandatory. JA251. That is simply not the case here. The language Congress used is not susceptible to any interpretation that leaves it within the Secretary's discretion as to whether to hold a hearing and render a decision within ninety days.

### 1.    The Plain Language: "Shall" Means "Shall."

Under the first and "cardinal canon" of statutory construction, "courts must presume that a legislature says in a statute what it means and means in a statute what it says." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992); *see also Bedroc Ltd., LLC v. United States*, 541 U.S. 176, 183, 124 S.Ct. 1587, 1593, 158 L.Ed.2d 338 (2004). Accordingly, when a statute is unambiguous, "this first canon is also the last: 'judicial inquiry is complete.'" *Id*. at 254, 112 S.Ct. at 1149 (quoting *Rubin v. United States*, 449 U.S. 424, 430, 101 S. Ct. 698, 66 L.Ed.2d 633 (1981)).

26

It has long been the usual rule of plain-language construction that "shall" is mandatory, while "may" is permissive or directory. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109, 122 S.Ct. 2061, 2070 (2002) ("'[S]hall' makes the act of filing a charge within a specified time period mandatory."); *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35, 118 S.Ct. 956, 962, 140 L.Ed.2d 62 (1998) ("[T]he mandatory 'shall,' . . . normally creates an obligation impervious to judicial discretion"); *United States v. Monsanto*, 491 U.S. 600, 607, 109 S.Ct. 2657, 2662, 105 L.Ed.2d 512 (1989) (where statute required that a person convicted of certain charges "shall forfeit . . . any property" and district court "shall order" forfeiture, "Congress could not have chosen stronger words to express its intent that forfeiture be mandatory in cases where the statute applied . . ."); *Air Line Pilots Ass'n, Int'l v. US Airways Grp., Inc.*, 609 F.3d 338, 342 (4th Cir. 2010) ("[I]t is uncontroversial that the term 'shall' customarily connotes a command, whereas the term 'may' typically indicates authorization without obligation.").

When Congress instructed the Secretary that she "shall" hold a hearing within ninety days of appeal, the Court should assume that Congress meant what it said absent compelling evidence that such a construction would frustrate Congress's intent. 42 U.S.C. § 1395ff(d)(1)(A). "The plain meaning of the legislation should be conclusive, except in the 'rare cases [in which] the literal

27

application of a statute will produce a result demonstrably at odds with the intention of its drafters." *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)).

The legislative history and purpose behind § 1395ff(d)(1)(A) further demonstrates that Congress meant what it said in the statute, and intended to impose on the Secretary a clear duty to hold a hearing within ninety days.

### 2.    The Legislative History And Purpose Of § 1395ff(d)(1)(A) Support Interpreting "Shall" As Mandatory.

Congress enacted § 1395ff(d)(1)(A) to prevent the precise situation in which CFVHS finds itself here - the victim of lengthy delays in obtaining a hearing on its Medicare appeals.    Prior to the enactment of the Benefits Improvement and Protection Act ("BIPA") in 2001 (which included § 1395ff(d)(1)(A)), there were no time limits imposed on administrative law judges hearing and deciding Medicare provider appeals.    *See* H.R. Rep. No. 108-391 at 789-90.    Congress imposed a time limit on the ALJs in § 1395ff(d)(1)(A) to ensure that Medicare appeals did not languish for years.    Indeed, Congress reinforced its point by titling paragraph (d) of § 1395ff *"Deadlines* for hearings by the Secretary; notice." 42 U.S.C. § 1395ff(d) (emphasis added).

Further, Congress established OMHA specifically for the purpose of ensuring that the deadlines were met.    As Chief ALJ Nancy Griswold recounted in

28

testimony before Congress, "OMHA was established to . . . reduce the average 368-day waiting time for a hearing decision that appellants experienced with SSA to the 90-day time frame for issuing dispositions established in the Medicare, Medicaid and SCHIP Benefits and Improvement Act of 2000 (BIPA) (Pub. L. 106-554)." Statement of Nancy J. Griswold on *"Office of Medicare Hearings and Appeals Workloads" before the United States H. Comm. On Oversight & Government Reform Subcomm. On Energy Policy, Health Care & Entitlements* at p. 3 (July 10, 2014) JA68.

The district court's holding that the statute does not give rise to a "clear duty" for the Secretary to provide a hearing within 90 days ignores the very purpose for which it was enacted:  to impose a 90-day deadline on the Secretary in which to hold a hearing and render a decision.  It also ignores the language requiring a hearing to be held "not later than the end of the 90-day period beginning on the date a request for hearing has been timely filed." 42 U.S.C. § 1395ff(d)(1)(A). The statute should be read to give effect to all of their various words and phrases, so as not to render any portion "mere surplussage." *In re Total Management, LLC*, 706 F.3d 245, 251 (4th Cir. 2013); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 991 (1979) ("In construing a statute, we are obliged to give effect, if possible, to every word Congress used.").

29

Because both the plain language of § 1395ff(d)(1)(A) and its legislative history support a mandatory and ministerial reading of the statute, the district court erred when it found no "clear" duty or "clear" right arising from it.

> ### 3. The Misapplication Of A Single Sentence From A Treatise Does Not Trump Plain Language.

When both the plain language and legislative history of a statute compel a mandatory and ministerial construction, one would expect that a contrary interpretation adopted by a court would be supported by a compelling and well-established rule of law. Unfortunately, that is not the case here.

The district court hangs its statutory construction hat on a single sentence quoted from the eighth subsection of a treatise chapter on "mandatory" versus "directory" statutory construction. *See* JA251-252 *quoting* NORMAN J. SINGER, J.D. & J.D. SHAMBIE SINGER, STATUTES AND STATUTORY CONSTRUCTION § 57:8 (7th ed. 2008). The treatise is cited as the sole support for the proposition that, "stated [statutory] consequences of noncompliance may compel a directory construction - for example, where a statute prescribes a remedial course that may be followed if the primary direction was not obeyed." Id. In the quoted sentence, however, Singer is describing an *exception* to a *corollary* to the usual rule that "where deviation from the direction of a statute implies a consequence, the statute is *mandatory*." SINGER, STATUTORY CONSTRUCTION § 57:8. (emphasis added). The actual rule, of course, would require a mandatory construction of "shall" in §

1395(d)(1)(A).  As would every other established canon of statutory construction recited in Chapter 57 of Singer's treatise. *See, e.g.*, Id. §§ 57:4, 57:5, 57:6, 57:7. Indeed, even Singer recognizes: "The form of the verb in a statute, i.e., something 'may,' 'shall' or 'must' be done, is the single most important textual consideration determining whether a statute is mandatory or directory." Id. § 57:3.

Nevertheless, based solely on the exception to the corollary to statutory-rule-of-construction-number-eight in Singer's treatise, the district court reasons that the escalation provisions in the Medicare Act reflect that "Congress . . . expressly anticipated delays in Medicare adjudications and prescribed escalation as the remedy." JA252.  Without examining the adequacy of that purported remedy, the district court jumps to the conclusion that it "cannot find that Congress clearly intended to grant plaintiff an absolute right to an ALJ hearing nor that defendant has a clear duty to provide such a hearing within the 90-day timeframe." Id.

The district court's reliance on Singer is, of course, misplaced.  As Singer makes clear (it devotes an entire subchapter to the issue), it is common for a statute to prescribe a consequence or remedy if a statutory command is violated. SINGER, STATUTORY CONSTRUCTION § 57:8.  Usually, the existence of a consequence or remedy only further supports the conclusion that a statute is mandatory. Id. Moreover, the presence or absence of consequences for violation of the statute does not answer the real question for mandamus purposes:  Whether the acts

31

required in § 1395ff(d)(1)(A) are ministerial or discretionary. *Burnett*, 474 F.2d at 882; *In re First Fed. Sav. & Loan Ass'n of Durham*, 860 F.3d at 138.

Finally, before adopting such a far-fetched and thinly supported construction of the statute, the district court should have at least examined whether HHS' own rules and policy statements actually support its lawyer's argument. They do not.

HHS's own formal rules reinforce the mandatory nature of the hearing requirement and statutory deadlines: "When a request for an ALJ hearing is filed after a QIC has issued a reconsideration, the ALJ *must* issue a decision, dismissal order, or remand . . . *no later than* the end of the 90 calendar day period beginning on the date the request for hearing is received . . ." 42 C.F.R. § 405.1016 (emphasis added). Separately, HHS has conceded that § 1395ff(d)(1)(A) provided for the "establishment of drastically reduced *mandatory* time frames for appeals decisions." Medicare Program: Changes to the Medicare Claims Appeal Procedures, 67 Fed. Reg. 69,312, 69,316 (proposed Nov. 15, 2002) (to be codified at 42 C.F.R. pt. 405) (emphasis added). More recently, HHS has stated that it "is unable to continue its past successes for adjudicating claims within 90 days, *as mandated by* the Benefits Improvement and Protection Act (BIPA) 2000." HHS, OMHA, *Justification for Estimates for Appropriations Committees, Overview of Performance,      Fiscal      Year      2015,* at      *7      (2014),* http://www.hhs.gov/budget/fy2015/fy-2015-hhs-congressional-budget-

justification.pdf (emphasis added). Prior to litigation, even HHS did not support

the argument it sold to the district court.

An exception to the corollary to rule-of-statutory-construction-number-eight

cannot and should not defeat the intent of Congress as stated both in the plain

language of the statute and revealed in the legislative history. The district court's

decision should be reversed.

## C.    The District Court Misconstrued The Nature And Purpose Of The Medicare Act's Escalation Provisions.

In addition to ignoring the plain language and intent of § 1395ff(d)(1)(A),

the district court did not properly analyze the escalation provision on which it

relied. As discussed in Section II.A. above, the only way the escalation statute can

mitigate Congress's command to the Secretary in § 1395ff(d)(1)(A) is if it suggests

that the Secretary has some discretion to perform the acts described elsewhere in

the statute. The escalation provision does not give the Secretary any such

discretion. Instead, it provides:

> In the case of a failure by an administrative law judge to render a
> decision by the end of the period described in paragraph (1), *the party
> requesting the hearing may* request a review by the Departmental
> Appeals Board of the Department of Health and Human Services,
> notwithstanding any requirements for a hearing for purposes of the
> party's right to such a review.

42 U.S.C. § 1395ff(d)(3)(A) (emphasis added).

The district court misinterpreted the escalation provision as relieving the

Secretary of a "clear" statutory duty and depriving CFVHS of a "clear" right to a

33

hearing within ninety days. ***First***, far from granting any discretion to the ***Secretary***, escalation is solely within the discretion of the ***appellant***: "the party requesting the hearing ***may*** request a review by the [DAB] . . ." 42 U.S.C. § 1395ff(d)(3)(A) (emphasis added).[4]  The reason is clear when the statute is examined taking into account the fact that the ALJ level is the only one in which the appellant is guaranteed a hearing:  Congress intended that only the appellant can waive its right to a hearing on its appeal.  The district court's construction of the Medicare Act, then, leaves CFVHS with a terrible choice: Voluntarily waive its right to due process, or suffer interminably until the Secretary feels like affording CFVHS a hearing.  Nothing within the Medicare Act gives the Secretary discretion to place CFVHS in this position.

***Second***, the structure of the escalation provision does not evidence any intention to relieve the Secretary from the ninety-day deadline imposed in subsection (d)(1)(A).  Instead, Congress specifically provided for a procedure by which the Secretary could be relieved of her deadline:  the ***appellant*** may, once again in its own discretion, file a "motion or stipulation . . . to waive such period."

_____

[4] Congress's use of the permissive "may" in close proximity to its use of "shall" in the Medicare Act is yet another indicator that Congress understood the difference between the two and meant what it said in § 1395ff(d)(1)(A). *See, e.g., Air Line Pilots Ass'n, Int'l*, 609 F.3d at 342 ("That the word 'may' is to be given a meaning distinct from the word 'shall' is further bolstered by Congress's use of both words in close proximity to one another, signaling that the contrast was not accidental or careless.").

42 U.S.C. § 1395ff(d)(1)(B). One does not "waive" a mere suggestion or authorization, as the Secretary would have it; one "waives" a *right*.

*Finally*, contrary to the district court's suggestion, JA252, escalation is not an exclusive remedy that an appellant is bound to pursue if the Secretary fails to comply with her statutory duty to hold a hearing within ninety days. Indeed, it is no "remedy" at all because it requires CFVHS to waive the fundamental right guaranteed CFVHS in § 1395ff(d)(1)(A): A hearing on its Medicare Appeals, at which it may present medical expert testimony. A "remedy," on the other hand, would provide a means to enforce the hearing right and redress injury caused by the Secretary's statutory violation. *Knapp, Stout & Co. v. McCaffrey*, 177 U.S. 638, 644, 20 S.Ct. 824, 827, 44 L.Ed.2d 921 (1900) (defining "remedy" as the means employed to enforce a right, or redress an injury). Moreover, if Congress had intended escalation to serve as an "exclusive remedy," it would have said as much in the statute. Indeed, Congress regularly prescribes "exclusive remedies" expressly when that is what it intends. *See, e.g.*, 28 U.S.C. § 2679 ("[T]he remedies provided by this title shall be exclusive."); 29 U.S.C. § 1854(d)(2) ("The exclusive remedy prescribed by paragraph (1) precludes the recovery under subsection (c) of this section of actual damages . . .").

But even if escalation was a potential remedy, the well-established test for a mandamus claim would require the district court to examine the adequacy of the

remedy before finding the mandamus claim lacking. *See, e.g., U.S. ex rel Rahman*, 198 F.3d at 511 (elements of mandamus included "there are no other adequate means to attain the desired relief); *Estate of Michael*, 173 F.3d at 513 (mandamus elements include that "no other adequate remedy is available."); *see also King v. Burwell*, 759 F.3d 358, 367 *aff'd by* 135 S. Ct. 475, 190 L.Ed. 2d 355 (2014) (where Secretary Burwell's proposed alternative forms of relief did not afford plaintiffs all relief they sought, the proposals were "inadequate" for purposes of the Administrative Procedures Act).

The district court did not address or discuss whether escalation was an "adequate" remedy. Instead, it found that CFVHS had properly pled that escalation was *inadequate* to remedy the Secretary's statutory violations. JA249. Indeed, the Complaint is replete with factual allegations demonstrating the inadequacy of escalation to remedy the Secretary's statutory violations. *See* JA17-20, JA22-23, JA24. Rule 12(b)(6) required the district court to treat those allegations as true. *E. Shore Mkt., Inc.*, 213 F.3d at 180. Clearly, it failed to do so.

The plain language of the Medicare Act provides that the Secretary has a clear, non-discretionary duty to provide CFVHS a hearing within 90 days of a timely-filed appeal unless CFVHS voluntarily waives its right to a hearing or waives its right to the ninety-day time period. The district court's statutory interpretation to the contrary was plainly erroneous, and should be reversed.

36

III.    **THE DISTRICT COURT ERRED WHEN IT PURPORTED TO EXERCISE ITS DISCRETION AGAINST AWARDING MANDAMUS ON A RULE 12(B)(6) MOTION.**

The district court far exceeded the boundaries of a Rule 12(b)(6) review when it attempted to exercise its equitable discretion to deny mandamus relief based on arguments raised by the Secretary unrelated to the allegations in the Complaint and extrinsic evidence. Moreover, the district court erred when it weighed arguments and evidence without converting the Secretary's motion to one for summary judgment and allowing CFVHS discovery and an opportunity to introduce contrary evidence. Reversal is appropriate.

A.    **The District Court Erred When It Weighed Competing Equities And Exercised Discretion On A Rule 12(b)(6) Motion.**

The district court improperly weighed competing arguments and evidence in exercising its discretion to deny mandamus. Relying on two decisions rendered in the D.C. Circuit, and ignoring the differences in procedural postures between those cases and this one,[5] the district court entertained arguments that were not derived from the Complaint, and weighed those arguments against equitable considerations

_____

[5] In *American Hospital Ass'n v. Burwell*, --- F. Supp.3d ----, 2014 WL 7205335 (D.D.C. Dec. 18, 2014), the AHA filed a motion for summary judgment seeking an early victory in the lawsuit. JA240. In light of the plaintiff's pending summary judgment motion, the district court proceeded to balance competing equities and determine whether to exercise its mandamus discretion. Similarly, *In re Barr Labs., Inc.* arose under the Administrative Procedures Act, and the D.C. Circuit was considering an appeal directly from the agency. 930 F.2d 72, 72-73 (D.C. Cir. 1991). Presumably, a record containing the parties' arguments and evidence before the agency was available to the Court.

37

that were actually pled. JA252-258. This fact-finding and argument-weighing was error because the district court was considering a motion under Rule 12(b)(6). JA249.

At the threshold, the district court should never have entertained the Secretary's equitable arguments - including her argument that budgetary restrictions prevented her from complying with her statutory mandate and that mandamus would require a "reordering of agency priorities" - without first converting the Secretary's motion to one for summary judgment. "[S]tatements of counsel regarding facts and arguments outside of the complaint may not be considered in ruling on a Rule 12(b)(6) motion." *E.I. Du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011); *see also Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011) (Rule 12(b)(6) motion is not an opportunity for "analysis of potential defenses to the claims set forth [in the Complaint] . . ."). Indeed, CFVHS urged the district court to refuse to consider the arguments, pointing out that they went well beyond the scope of the court's relevant inquiry on a motion to dismiss. JA103-104. CFVHS also asked the district court to give it notice and an opportunity to take discovery if the district court decided to convert the motion to one for summary judgment and consider those arguments. JA105, JA234. The district court's refusal to allow CFVHS discovery and an opportunity to respond was error. *E.I. Du Pont de Nemours &*

*Co.*, 637 F.3d at 448-49 (holding that conversion of a motion to dismiss to one for summary judgment was not appropriate where the parties had not had an opportunity for discovery).

The district court well exceeded its Rule 12(b)(6) boundaries when it wrote that, "[t]here are, undoubtedly, equitable considerations weighing in plaintiff's favor," but then went on to reach a result adverse to CFVHS. JA257. "The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). Rule 12(b)(6) does not permit this sort of analysis, and instead required the Court to credit the well-pled factual allegations and draw all reasonable inferences in CFVHS's favor. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).

Moreover, the district court's decision inherently placed a burden on CFVHS to plead sufficient facts and evidence in its Complaint to convince the court of the ultimate merit of CFVHS's case. It is axiomatic that a plaintiff does not have to produce evidence sufficient to ultimately prevail in its Complaint, and the district court erred when it required as much. *See, e.g., Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 56 (1st Cir. 2013) ("Once again, it is important to bear in mind that the plaintiffs, for pleading purposes, need not *establish* this

element . . .") (emphasis in original); *Pinnacle Armor, Inc. v. U.S.*, 648 F.3d 708, 721 (9th Cir. 2011) (reversing Rule 12(b)(6) dismissal for plaintiff's purported failure to "demonstrate" an element of its claim; plaintiff was not required to "demonstrate" anything at the Rule 12(b)(6) stage).

Nor can the district court's opinion be fairly read to imply that the mandamus claim stated in the Complaint was somehow "implausible." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). The district court's decision never even hints that CFVHS failed to plead sufficient facts to present a plausible claim in its 74-paragraph Complaint. The district court acknowledged that CFVHS has pled numerous facts that demonstrate "equitable considerations weighing in plaintiff's favor"; the court simply chose to disregard them. JA257. "[P]lausibility is not akin to a 'probability requirement,'" *Iqbal*, 556 U.S. at 678, and the district court could not dismiss CFVHS's Complaint at the motion-to-dismiss stage simply by handicapping the likelihood that CFVHS would ultimately convince the judge to grant mandamus. As the Supreme Court has previously noted, a well-pled Complaint survives a Rule 12(b)(6) motion even if it appears "that recovery is very remote and unlikely." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *abrogated on other grounds, Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

40

The district court erred when it attempted to weigh competing facts and arguments at the Rule 12(b)(6) stage, and reversal is appropriate.

**B.    The District Court Exceeded Its Rule 12(b)(6) Boundaries When It Cherry-Picked Public Record Evidence That Favored The Secretary's Position.**

In addition to improperly considering the Secretary's arguments that went well beyond the Complaint, the district court improperly cherry-picked evidence to support those arguments from the public record.  First, apparently relying on the court's ability to take judicial notice of public records on a Motion to Dismiss, the district court went to great lengths to take judicial notice of certain Appropriations Acts through which Congress has funded OMHA. JA255.  But the court did not take notice of *all* relevant Appropriations Acts and related public records.

Just one of the many available public record facts that the district court failed to note: Congress explicitly granted the Secretary authority to transfer funds from other HHS appropriations to OMHA up to a capped amount.   HHS Appropriations Act, 2014, Pub. L. No. 113-76 Div. H, Title II, 128 Stat. 363, 382 (Jan. 17, 2014).  The Secretary has chosen not to exercise this authority to comply with her obligations under 42 U.S.C. § 1395ff(d)(1)(A), although she did use it to transfer $113 million to implement the Affordable Care Act in 2013.   Brett Norman and David Nather, *The Obamacare Money Under the Couch*, POLITICO, Mar. 7, 2014.  Moreover, the district court failed to note the timing and amount of

41

the Secretary's appropriations requests.  For example, it could have noted that the Secretary waited until 2014, after litigation was commenced against her, to request additional funds from Congress to address the Medicare appeals backlog. *See, e.g.*, OMHA     Budget     Overview,     http://www.hhs.gov/about/budget/budget-in-brief/omha/index.html (last visited 6/29/15).  Had the district court permitted CFVHS to take discovery regarding the Secretary's assertions, additional sources of funds and opportunities for the agency to complete its work within its budget may have been found.

And, by failing to give CFVHS notice that the district court would consider the Secretary's argument that she was thwarted by budgetary restrictions, the district court did not get the benefit of full briefing on the merit of the Secretary's excuse.  Prior case law is clear: budgetary restraints are *no* excuse.  "Federal agencies may not ignore statutory mandates simply because Congress has not yet appropriated all of the money necessary to complete a project." *In re Aiken Cnty.*, 725 F.3d 255, 259 (D.C. Cir. 2013); *see also Tennessee Valley Auth. v. Hill*, 437 U.S. 153, 190, 98 S.Ct. 2279, 2300, 57 L.Ed.2d 117 (1978) (doctrine repeals by implication are disfavored "applies with even greater force when the claimed repeal rests solely on an Appropriations Act").

The district court also erred when it credited the Secretary's argument that a writ of mandamus would necessarily "reorder agency priorities." JA256-257.  The

only agency "priority" the district court noted was the Secretary's prioritization of Medicare beneficiary appeals. JA256. Had the district court permitted discovery, there is good reason to believe that it would have uncovered that fewer than 10% of the pending appeals were filed by beneficiaries. *See* Susan Jaffe, Medicare agency seeks to speed up appeals for coverage, The Washington Post (Jan. 19, 2014), www.washingtonpost.com/politics/medicare-agency-seeks-to-speed-up-appeals-for-coverage/2014/01/19.html (last visited 6/29/15) (noting that beneficiary appeals comprised approximately 10% of total appeals). Prioritizing fewer than 10% of pending appeals does not prevent the Secretary from timely adjudicating CFVHS's appeals within ninety days, and it certainly does not explain why CFVHS has waited almost two years for its own ALJ hearings.

"To say that a court will take judicial notice of a fact . . . is merely another way of saying that the usual forms of evidence will be dispensed with if knowledge of the fact can otherwise be acquired." *Shapleigh v. Mier*, 299 U.S. 468, 475, 57 S.Ct. 261, 264, 81 L.Ed. 355 (1937). As with any other evidence provided on a Rule 12(b)(6) motion, the district court should have exercised caution to ensure that it was not on matters beyond the scope of the Complaint. See *Brockington*, 637 F.3d at, 506 (4th Cir. 2011) (Rule 12(b)(6) motion invites inquiry on legal sufficiency of the complaint, "not an analysis of potential defenses to the claims set forth therein . . ."). Further, the district court selectively took notice of individual

43

facts in support of defensive arguments on which it refused to allow CFVHS to be heard. JA255-256. Reversal is appropriate here.

## IV.   THE   DISTRICT   COURT'S   DISMISSAL   OF   CFVHS'S DECLARATORY JUDGMENT CLAIM SHOULD BE REVERSED.

The district court dismissed CFVHS's declaratory judgment action solely because it was dismissing the underlying mandamus suit that provides the right of action as to which declaratory relief was alternatively requested. JA258. Accordingly, reversal of the district court's dismissal of the mandamus claim also necessitates reversal of the court's dismissal of the declaratory judgment claim.

## <u>REQUEST FOR ORAL ARGUMENT</u>

Cumberland County Hospital System d/b/a Cape Fear Valley Health System respectfully requests oral argument in this matter for the following reasons: (1) the legal issues raised in this appeal are of continuing public interest, and may serve as precedent or otherwise affect matters pending in district courts around the country; (2) the differences in procedural postures between this case and prior cases upon which the district court relied should be adequately examined in this appeal; and (3) if the district court is upheld in all respects, it will create a significant departure from established law regarding the standard governing motions to dismiss pursuant to Rule 12(b)(6), and oral argument should be held before introducing a new exception to otherwise well-established law.

## CONCLUSION

CFVHS came to the district court seeking a writ of mandamus that would afford CFVHS its "day in court" on more than 760 Medicare appeals as guaranteed under the Medicare Act. The statute required the Secretary to hold a hearing on CFVHS's timely-filed Medicare appeals within ninety days, and CFVHS is still waiting for those hearings almost two years later. CFVHS is now before this Court because the district court, once again, denied CFVHS a "day in court" to present its evidence, despite the fact that CFVHS's Complaint clearly alleges each and every necessary element of its mandamus claim. The district court's dismissal was error, and this Court should reverse and remand with clear instructions to the district court that it may not exercise its mandamus discretion until it has afforded CFVHS an opportunity for discovery and heard CFVHS's evidence.

DATED: July 10, 2015              Respectfully submitted,

/s/ Kathryn F. Taylor
Kathryn F. Taylor
N.C. State Bar # 43933
K&L GATES LLP
430 Davis Drive, Suite 400
Morrisville, NC 27560
Telephone: (919) 466-1268
Facsimile: (919) 516-2068
kathryn.taylor@klgates.com

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 15-1393          **Caption:** Cumberland County Hosp. Sys. v. Burwell

### CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

   This brief complies with the   type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [✓]   this brief contains _____10,908_____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [ ]   this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [ ]   this brief has been prepared in a proportionally spaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*]; **or**

   [ ]   this brief has been prepared in a monospaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*].

(s) /s/ Kathryn F. Taylor _____

Attorney for Plaintiff-Appellant _____

Dated: 7/10/15 _____

04/13/2012
SCC

## CERTIFICATE OF SERVICE

The undersigned hereby certify that on the 10th day of July, 2015 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which should send notification of such filing to the parties below.

**VIA CM/ECF SYSTEM**
Joshua M. Salzman
U.S. Department of Justice, Civil Division
950 Pennsylvania Avenue, N.W., Rm. 7258
Washington, D.C.  20530
(202) 532-4747
Joshua.M.Salzman@usdoj.gov

/s/ Kathryn F. Taylor
Kathryn F. Taylor
N.C. State Bar # 43933
K&L GATES LLP
430 Davis Drive, Suite 400
Morrisville, NC  27560
Telephone:  (919) 466-1268
Facsimile:  (919) 516-2068
kathryn.taylor@klgates.com

ADDENDUM 1

**(5) Limitation on qualified independent contractor liability**

No qualified independent contractor having a contract with the Secretary under this subsection and no person who is employed by, or who has a fiduciary relationship with, any such qualified independent contractor or who furnishes professional services to such qualified independent contractor, shall be held by reason of the performance of any duty, function, or activity required or authorized pursuant to this subsection or to a valid contract entered into under this subsection, to have violated any criminal law, or to be civilly liable under any law of the United States or of any State (or political subdivision thereof) provided due care was exercised in the performance of such duty, function, or activity.

**(d) Deadlines for hearings by the Secretary; notice**

**(1) Hearing by administrative law judge**

**(A) In general**

Except as provided in subparagraph (B), an administrative law judge shall conduct and conclude a hearing on a decision of a qualified independent contractor under subsection (c) of this section and render a decision on such hearing by not later than the end of the 90–day period beginning on the date a request for hearing has been timely filed.

**(B) Waiver of deadline by party seeking hearing**

The 90–day period under subparagraph (A) shall not apply in the case of a motion or stipulation by the party requesting the hearing to waive such period.

**(2) Departmental Appeals Board review**

**(A) In general**

The Departmental Appeals Board of the Department of Health and Human Services shall conduct and conclude a review of the decision on a hearing described in paragraph (1) and make a decision or remand the case to the administrative law judge for reconsideration by not later than the end of the 90–day period beginning on the date a request for review has been timely filed.

**(B) DAB hearing procedure**

In reviewing a decision on a hearing under this paragraph, the Departmental Appeals Board shall review the case de novo.

616

ADDENDUM 2

**(3) Consequences of failure to meet deadlines**

**(A) Hearing by administrative law judge**

In the case of a failure by an administrative law judge to render a decision by the end of the period described in paragraph (1), the party requesting the hearing may request a review by the Departmental Appeals Board of the Department of Health and Human Services, notwithstanding any requirements for a hearing for purposes of the party's right to such a review.

**(B) Departmental Appeals Board review**

In the case of a failure by the Departmental Appeals Board to render a decision by the end of the period described in paragraph (2), the party requesting the hearing may seek judicial review, notwithstanding any requirements for a hearing for purposes of the party's right to such judicial review.

**(4) Notice**

Notice of the decision of an administrative law judge shall be in writing in a manner calculated to be understood by the individual entitled to benefits under part A of this subchapter or enrolled under part B of this subchapter, or both, and shall include—

**(A)** the specific reasons for the determination (including, to the extent appropriate, a summary of the clinical or scientific evidence used in making the determination);

**(B)** the procedures for obtaining additional information concerning the decision; and

**(C)** notification of the right to appeal the decision and instructions on how to initiate such an appeal under this section.

**(e) Administrative provisions**

**(1) Limitation on review of certain regulations**

A regulation or instruction that relates to a method for determining the amount of payment under part B of this subchapter and that was initially issued before January 1, 1981, shall not be subject to judicial review.

**(2) Outreach**

The Secretary shall perform such outreach activities as are necessary to inform individuals entitled to benefits under this subchapter and providers of services and suppliers with respect to their rights of, and the process for, appeals made under this

617